Sondra Bristow Twitty, et al v. Sandhills Medical Foundation, Inc.

Case No.:

NOTICE OF REMOVAL

# EXHIBIT A

All Docs Filed in State Court

Case: *2025CP1300499*

*Sondra Twitty, et al v. Sandhills Medical Foundation, Inc.*

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHESTERFIELD | ) | THIRD JUDICIAL CIRCUIT |

SONDRA BRISTOW TWITTY, on behalf of herself and all others similarly situated,

Plaintiff,

v.

SANDHILLS MEDICAL FOUNDATION, INC.,

Defendant.

Case No.: ____________

**TO: ABOVE NAMED DEFENDANT**

YOU ARE HEREBY SUMMONED and required to answer the Complaint in this Action, a copy of which is herewith served upon you, and to serve a copy of your Answer to the Complaint upon the subscriber at 409 E Church St, Jefferson, South Carolina, 29718, within thirty (30) days after the service thereof, exclusive of the day of such service. If you fail to answer the Complaint within that time, the Plaintiff shall apply to the Court for a judgment by default against you for the relief demanded in the Complaint.

Dated: July 8, 2025

Respectfully submitted,
By: */s/Paul J. Doolittle, Esq.*
Paul J. Doolittle, Esq.
(SC State Bar No.: 66490 )
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Telephone:(803) 222-2222
Email: Paul.Doolittle@poulinwilley.com
cmad@poulinwilley.com

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHESTERFIELD | ) | THIRD JUDICIAL CIRCUIT |

SONDRA BRISTOW TWITTY, on behalf of herself and all others similarly situated,

Plaintiff,

v.

SANDHILLS MEDICAL FOUNDATION, INC.,

Defendant.

Case No.: ____________

**CLASS ACTION COMPLAINT**

**DEMAND FOR A JURY TRIAL**

Plaintiff Sondra Bristow Twitty ("Plaintiff") brings this Class Action Complaint ("Complaint") against Sandhills Medical Foundation, Inc. ("Defendant") as an individual and on behalf of all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsels' investigation, and upon information and belief as to all other matters, as follows:

## SUMMARY OF ACTION

1. Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard Plaintiff and other similarly situated current and former patients of Defendant's ("Class Members," defined *infra*) sensitive information, including personally identifiable information ("PII") and protected health information ("PHI") (together with PHI, "Private Information") that was compromised in a cyber incident (the "Data Breach").

2. Defendant is a community health center serving residents of Chesterfield, Kershaw, Lancaster, and Sumter Counties.

3. Defendant collects, stores, and maintains certain Private Information of Plaintiff and Class Members in the ordinary course of business.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

4. Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their Private Information confidential, safe, secure, and protected from unauthorized disclosure or access.

5. Plaintiff's and Class Members' sensitive personal information—which they entrusted to Defendant on the mutual understanding that Defendant would protect it against disclosure—was targeted, compromised and unlawfully accessed due Data Breach.[1] Upon information and belief, the ransomware group INC Ransom is responsible for the Data Breach.[2]

6. Upon information and belief, the Private Information compromised in the Data Breach includes Plaintiff's and Class Members' full names, Social Security numbers, and medical information.

7. Defendant failed to take precautions designed to keep individuals' Private Information secure.

8. Defendant owed Plaintiff and Class Members a duty to take all reasonable and necessary measures to keep the Private Information collected safe and secure from unauthorized access. Defendant solicited, collected, used, and derived a benefit from the Private Information, yet breached its duty by failing to implement or maintain adequate security practices.

9. The sensitive nature of the data exposed through the Data Breach signifies that Plaintiff and Class Members have suffered irreparable harm. Plaintiff and Class Members have lost the ability to control their private information and are subject to an increased risk of identity theft.

---

[1] *Ransomware Group incransom Hits: Sandhills Medical Foundation*, https://www.hookphish.com/blog/ransomware-group-incransom-hits-sandhills-medical-foundation/ (last visited July 8, 2025).
[2] *Id.*

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

10. Defendant failed to use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information they maintained for Plaintiff and Class Members, causing the exposure of Plaintiff's and Class Members' Private Information.

11. As a result of Defendant's inadequate digital security and notice process, Plaintiff's and Class Members' Private Information was exposed to criminals. Plaintiff and the Class Members have suffered and will continue to suffer injuries, including: financial losses caused by misuse of their Private Information; the loss or diminished value of their Private Information as a result of the Data Breach; lost time associated with detecting and preventing identity theft; and, theft of personal and financial information.

12. Plaintiff brings this action on behalf of all persons whose Private Information was compromised as a result of Defendants' failure to: (i) adequately protect the Private Information of Plaintiff and Class Members; (ii) warn Plaintiff and Class Members of Defendants' inadequate information security practices; (iii) effectively secure hardware containing protected Private Information using reasonable and adequate security procedures free of vulnerabilities and incidents; and (iv) timely notify Plaintiff and Class Members of the Data Breach. Defendants's conduct amounts to at least negligence and violates federal and state statutes.

13. Plaintiff brings this action individually and on behalf of a Nationwide Class of similarly situated individuals against Defendants for: negligence; negligence *per se*; unjust enrichment; and breach of implied contract; and breach of confidence.

14. Plaintiff seeks to remedy these harms and prevent any future data compromise on behalf of herself, and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and who remain at risk due to Defendant's inadequate data security practices.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

## JURISDICTION AND VENUE

15. This Court has original jurisdiction over this matter pursuant to S.C. Const. Art. V, § 11. Further, Plaintiff and the Class seek damages in excess of $50,000. Further, this Court has subject matter jurisdiction over this action because the events or omissions giving rise to the claims brought in this Complaint occurred in this District.

16. The Court has general personal jurisdiction over Defendant because, personally or through its agents. This Court has personal jurisdiction over Defendant pursuant to S.C. Code Ann. § 36-2-802 because Defendant is a South Carolina domestic corporation, with its primary place of business in this District.

17. Venue is proper in this County under S.C. Code Ann. § 15-7-110 because Defendant may be served in this District, and a substantial part of the events or omissions giving rise to the claim arose in this District.

## PARTIES

18. Plaintiff is a resident and citizen of Jefferson, South Carolina.

19. Defendant is a South Carolina corporation with its principal place of business located at 409 E Church St, Jefferson, South Carolina, 29718, United States. Defendant's Registered Agent is Ernest J. Stan Wardlaw located at 1111 Broad Street, Suite C, Camden, South Carolina, 29020.

## FACTUAL ALLEGATIONS

### A. Defendant's Business

20. Defendant is a community health center serving residents of Chesterfield, Kershaw, Lancaster, and Sumter Counties.

21. Plaintiff and Class Members are current and former patients of Defendant.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

22. To obtain healthcare services from Defendant, patients, including Plaintiff and Class members, were required to provide sensitive and confidential Private Information, including but not limited to their names, dates of birth, Social Security numbers, health insurance information, treatment information, medical record number, and medical history information.

23. The information held by Defendant at the time of the Data Breach included the unencrypted Private Information of Plaintiff and Class Members.

24. Upon information and belief, Defendant made promises and representations to Plaintiff and Class Members that the Private Information collected from them would be kept safe and confidential, the privacy of that information would be maintained, and Defendant would delete any sensitive information after it was no longer required to maintain it, including through its privacy policies.

25. Plaintiff and Class Members provided their Private Information to Defendant with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

26. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class Members relied on the sophistication of Defendant to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to make only authorized disclosures of this information. Plaintiff and Class Members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

27. Defendant had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class Members from involuntary disclosure to third parties. Defendant has a legal duty to keep Patients' Private Information safe and confidential.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

28. Defendant had obligations under the FTC Act, HIPAA, contract, industry standards, and representations made to Plaintiff and Class Members, to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

29. Defendant derived a substantial economic benefit from collecting Plaintiff's and Class Members' Private Information. Without the required submission of Private Information, Defendant could not perform the services it provides.

30. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' Private Information from disclosure.

**B. The Data Breach**

31. On or around June 3, 2025, Defendant was the victim of a Data Breach.[3]

32. As a result of the Data Breach, the following types of Private Information were compromised: full name, Social Security number, and medical information.

33. Upon information and belief, the ransomware group INC Ransom is responsible for the Data Breach.[4] INC Ransomware is a ransomware extortion operation that emerged in July of 2023, and targets multiple industries including healthcare, education, and government entities.[5]

34. Defendant had obligations created by the FTC Act, HIPPA, contract, common law, and industry standards to keep Plaintiff's and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

---

[3] *Ransomware Group incransom Hits: Sandhills Medical Foundation*, https://www.hookphish.com/blog/ransomware-group-incransom-hits-sandhills-medical-foundation/ (last visited July 8, 2025).
[4] *Id.*
[5] https://www.sentinelone.com/anthology/inc-ransom/ (last visited July 8, 2025).

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

35. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of Private Information, such as encrypting the information or deleting it when it is no longer needed.

36. The Data Breach resulted in an unauthorized third-party accessing and acquiring files containing unencrypted Private Information of Plaintiff and Class Members. Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

37. Upon information and belief, Plaintiff's Private Information, and that of Class Members, was subsequently published on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

**C. The Defendant Acquires, Collects, and Stores Plaintiff's and Class Members' Private Information.**

38. As a condition of obtaining medical services from Defendant, Plaintiff and Class Members were required to give their sensitive and confidential Private Information to Defendant.

39. Defendant retains and stores this information and derives a substantial economic benefit from the Private Information that it collects. But for the collection of Plaintiff's and Class Members' Private Information, Defendant would be unable to perform its services.

40. By obtaining, collecting, and storing the Private Information of Plaintiff and Class Members, Defendant assumed legal and equitable duties and knew or should have known that they were responsible for protecting the Private Information from disclosure.

41. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information and relied on Defendant to keep their Private Information confidential and maintained securely, to use this information for business purposes only, and to make only authorized disclosures of this information.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

42. Upon information and belief, Defendant made promises to Plaintiff and Class Members to maintain and protect their Private Information, demonstrating an understanding of the importance of securing Private Information.

43. Defendant's negligence in safeguarding the Private Information of Plaintiff and Class Members is exacerbated by the repeated warnings and alerts directed to protecting and securing sensitive data.

**D. Defendant Knew or Should Have Known of the Risk of a Cyber Attack Because Healthcare Entities in Possession of Private Information Are Particularly Suspectable to Cyber Attacks.**

44. Data thieves regularly target entities in the healthcare industry like Defendant due to the highly sensitive information that they maintain. Defendant knew and understood that unprotected Private Information is valuable and highly sought after by criminal parties who seek to illegally monetize that Private Information through unauthorized access.

45. Defendant's data security obligations were particularly important given the substantial increase in cyber-attacks and/or data breaches targeting healthcare entities like Defendant that collect and store Private Information and other sensitive information, preceding the date of the Data Breach.

46. In light of recent high profile data breaches at other industry-leading companies, including, *e.g.*, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Defendant knew or should have known that the Private Information that it collected and maintained would be targeted by cybercriminals.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

47. For example, of the 1,862 recorded data breaches in 2021, 330 of them, or 17.7%, were in the medical or healthcare industry.[6]

48. The 330 breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.[7]

49. Entities in custody of PHI and/or medical information reported the largest number of data breaches among all measured sectors in 2022, with the highest rate of exposure per breach.[8] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that victims were often forced to pay out of pocket costs for healthcare they did not receive in order to restore coverage.[9] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. 40 percent of the patients were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.[10]

50. Despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect the Private Information of Plaintiff and Class Members from being compromised.

---

[6] 2021 Data Breach Annual Report (ITRC, Jan. 2022), https://notified.idtheftcenter.org/s/, at 6. (last visited July 8, 2025)
[7] *Id.*
[8] *See* Identity Theft Resource Center, *2022 Annual Data Breach Report*, https://www.idtheftcenter.org/publication/2022-data-breach-report/ (last visited July 8, 2025).
[9] *See* Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last visited July 8, 2025).
[10] *See id.*

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

51. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's server(s), and those transmitted to third-party vendors' servers, and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

52. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

53. The ramifications of Defendant's failure to keep secure the Private Information of Plaintiff and Class Members are long lasting and severe. Once Private Information is stolen, fraudulent use of that information and damage to victims may continue for years.

54. This includes the significant costs in time and expense imposed on Plaintiff and Class Members because of a breach. Nevertheless, Defendant failed to take adequate cybersecurity measures to prevent the Data Breach.

**E. Defendant Fail to Comply with FTC Guidelines**

55. The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

56. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. These guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[11]

57. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[12]

58. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

59. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

60. These FTC enforcement actions include actions against healthcare entities, like Defendant. *See, e.g.*, *In the Matter of LabMD, Inc., a corp*, 2016-2 Trade Cas. (CCH) ¶ 79708, 2016 WL 4128215, at *32 (MSNET July 28, 2016) ("[T]he Commission concludes that LabMD's

---

[11] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited July 8, 2025)

[12] *Id.*

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

data security practices were unreasonable and constitute an unfair act or practice in violation of Section 5 of the FTC Act.”).

61. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits “unfair . . . practices in or affecting commerce,” including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant’s duty in this regard.

62. Defendant failed to properly implement basic data security practices.

63. Defendant’s failure to employ reasonable and appropriate measures to protect against unauthorized access to Patients’ Private Information or to comply with applicable industry standards constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

64. Upon information and belief, Defendant was at all times fully aware of its obligation to protect the Private Information of its patients; Defendant was also aware of the significant repercussions that would result from its failure to do so. Accordingly, Defendant’s conduct was particularly unreasonable given the nature and amount of Private Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiff and the Class.

**F. Defendant Fails to Comply with HIPAA Guidelines.**

65. Defendant is a covered businesses under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E (“Standards for Privacy of Individually Identifiable Health Information”),

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

66. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[13] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

67. HIPAA's Privacy Rule or *Standards for Privacy of Individually Identifiable Health Information* establishes national standards for the protection of health information.

68. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

69. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

70. "Electronic protected health information" is "individually identifiable health information . . . that is (i) transmitted by electronic media; maintained in electronic media." 45 C.F.R. § 160.103.

71. HIPAA's Security Rule requires Defendant to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

[13] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

d. Ensure compliance by its workforce.

72. HIPAA also requires Defendant to "review and modify the security measures implemented . . . as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Defendant are required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

73. HIPAA and HITECH also obligate Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic PHI that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

74. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

75. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of PHI in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

76. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[14] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[15]

77. Defendant Owed Plaintiff and Class Members a Duty to Safeguard their Private Information.

78. In addition to its obligations under federal and state laws, Defendant owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession, and in the possession of its third-party vendors, from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols, and those of its third-party vendors, adequately protected the Private Information of Class Members.

79. Defendant owed a duty to Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect the Private Information in its possession, and in its third-party vendors possession, including adequately training employees and

[14] https://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html (last accessed June 3, 2025)
[15] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html (last accessed July 8, 2025)

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

others who accessed Private Information within computer systems on how to adequately protect Private Information.

80. Defendant owed a duty to Plaintiff and Class Members to implement processes that would detect a compromise of Private Information in a timely manner.

81. Defendant owed a duty to Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

82. Defendant owed a duty to Plaintiff and Class Members to disclose in a timely and accurate manner when and how the Data Breach occurred.

83. Defendant owed a duty of care to Plaintiff and Class members because they were foreseeable and probable victims of any inadequate data security practices.

**G. The Data Breach Increases Plaintiff's and Class Members' Risk of Identity Theft.**

84. The unencrypted Private Information of Plaintiff and Class Members will end up (and likely has already ended up) for sale on the dark web, as that is the *modus operandi* of hackers.

85. Unencrypted Private Information may also fall into the hands of companies that will use the detailed Private Information for targeted marketing without the approval of Plaintiff and Class Members.

86. Simply put, unauthorized individuals can easily access the Private Information of Plaintiff and Class Members because of the Data Breach.

87. The link between a data breach and the risk of identity theft is simple and well established. Criminals acquire and steal Private Information to monetize the information. Criminals monetize the data by selling the stolen information on the black market to other criminals who then utilize the information to commit a variety of identity theft related crimes discussed below.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

88. Plaintiff's and Class Members Private Information is of great value to hackers and cyber criminals, and the data stolen in the Data Breach has been used and will continue to be used in a variety of sordid ways for criminals to exploit Plaintiff and Class Members and to profit from their misfortune.

**H. Loss of Time to Mitigate the Risk of Identity Theft and Fraud**

89. As a result of the recognized risk of identity theft, when a data breach occurs and an individual learns that their Private Information was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud.

90. Thus, due to the actual and imminent risk of identity theft, Plaintiff and Class Members must monitor their financial accounts for many years to mitigate the risk of identity theft.

91. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions, such as changing passwords and resecuring their own computer systems.

92. Plaintiff's mitigation efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."[16]

93. Plaintiff's mitigation efforts are also consistent with the steps the FTC recommends data breach victims take to protect their personal and financial information after a data breach (and those urged by Defendant) including: contacting one of the credit bureaus to place a fraud alert

[16] *See* United States Government Accountability Office, GAO-07-737, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/new.items/d07737.pdf (last visited July 8, 2025).

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

(and considering an extended fraud alert that lasts for seven years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a credit freeze on their credit, and correcting their credit reports.[17]

94. And for those Class Members who experience actual identity theft and fraud, the United States Government Accountability Office released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims of identity theft will face "substantial costs and time to repair the damage to their good name and credit record."

**I. Diminution of Value of Private Information.**

95. Private Information is valuable property.[18] Its value is axiomatic, considering the value of Big Data in corporate America and that the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates, beyond doubt, that Private Information has considerable market value.

96. Upon information and belief, the Private Information stolen in the Data Breach is significantly more valuable than the loss of, say, credit card information in a large retailer data breach. Victims affected by those retailer breaches could avoid much of the potential future harm by simply cancelling credit or debit cards and obtaining replacements. Upon information and belief, the information stolen in the Data Breach is difficult, if not impossible, to change.

97. This kind of data, as one would expect, demands a much higher price on the dark web. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit

---

[17] *See* Federal Trade Commission, *Identity Theft.gov*, https://www.identitytheft.gov/Steps (last visited July 8, 2025).

[18] *See* "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown," at 2, U.S. Government Accountability Office, June 2007, https://www.gao.gov/new.items/d07737.pdf (last visited July 8, 2025) ("GAO Report").

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

card information, personally identifiable information . . . [is] worth more than 10x on the black market."[19]

98. Sensitive Private Information can sell for as much as $363 per record according to the Infosec Institute.[20]

99. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion.[21] In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[22,23] Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50 a year.[24]

100. As a result of the Data Breach, Plaintiff's and Class Members Private Information, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an

---

[19] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT WORLD (Feb. 6, 2015), http://www.itworld.com/article/2880960/anthem-hackpersonal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html
(last visited July 8, 2025).

[20] *See, e.g.*, John T. Soma, et al, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted). (last visited July 8, 2025).

[21] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/
(last visited July 8, 2025).

[22] https://www.latimes.com/business/story/2019-11-05/column-data-brokers (last visited June 23, 2025).

[23] https://datacoup.com/ (last visited June 13, 2025).

[24] https://www.thepennyhoarder.com/make-money/nielsen-panel/#:~:text=Sign%20up%20to%20
join%20the,software%20installed%20on%20your%20computer (last visited June 23, 2025).

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

economic loss. Moreover, the Private Information is now readily available, and the rarity of the data has been lost, thereby causing additional loss of value.

101. The fraudulent activity resulting from the Data Breach may not come to light for years.

102. Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. Plaintiff and Class Members are incurring and will continue to incur such damages in addition to any fraudulent use of their Private Information.

103. Defendant was, or should have been, fully aware of the unique type and the significant volume of data on Defendant's network, amounting to thousands of individuals' detailed Private Information and, thus, the significant number of individuals who would be harmed by the exposure of the unencrypted data.

104. The injuries to Plaintiff and Class Members were directly and proximately caused by Defendant's failure to implement or maintain adequate data security measures for the Private Information of Plaintiff and Class Members.

**J. The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary.**

105. Given the type of targeted attack in this case, the sophisticated criminal activity, the volume of data compromised in this Data Breach, and the sensitive type of Private Information involved in this Data Breach, there is a strong probability that entire batches of stolen information have been placed, or will be placed, on the black market/dark web for sale and purchase by criminals intending to utilize the Private Information for identity theft crimes—*e.g.*, opening bank accounts in the victims' names to make purchases or to launder money; file false tax returns; take out loans or lines of credit; or file false unemployment claims.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

106. Such fraud may go undetected until debt collection calls commence months, or even years, later. An individual may not know that their Private Information was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

107. Consequently, Plaintiff and Class Members are at an increased risk of fraud and identity theft for many years into the future.

108. The retail cost of credit monitoring and identity theft monitoring can cost around $200 a year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft resulting from Defendant's Data Breach. This is a future cost for a minimum of five years that Plaintiff and Class Members would not need to bear, but for Defendant's failure to safeguard their Private Information.

**K. Loss of the Benefit of the Bargain**

109. Furthermore, Defendant's poor data security deprived Plaintiff and Class Members of the benefit of their bargain. When agreeing to pay Defendant for the provision of its services, Plaintiff and other reasonable consumers understood and expected that they were, in part, paying for the service and necessary data security to protect the Private Information when, in fact, Defendant did not provide the expected data security. Accordingly, Plaintiff and Class Members received services that were of a lesser value than what was reasonably expected to be received under the bargains struck with Defendant.

**L. Plaintiff's Experience**

110. Plaintiff is a current patient of Defendant.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

111. To obtain medical services from Defendant, Plaintiff was required to provide her Private Information to Defendant, including her name, Social Security number, date of birth, address, phone number, and other sensitive information.

112. Upon information and belief, at the time of the Data Breach, Defendant retained Plaintiff's Private Information.

113. Plaintiff is very careful about sharing her sensitive Private Information. Plaintiff stores any documents containing her Private Information in a safe and secure location. Plaintiff has never knowingly transmitted unencrypted sensitive Private Information over the Internet or any other unsecured source.

114. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including checking her bills and accounts to make sure they were correct. Plaintiff has spent time dealing with the Data Breach, valuable time she otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

115. As a result of the Data Breach, Plaintiff fears for her personal financial security and uncertainty over what medical information was revealed in the Data Breach. She is experiencing anxiety and fear because of the Data Breach and the invasion of her privacy. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

116. Additionally, as a result of the Data Breach, Plaintiff has experienced an uptick in spam calls, text messags and emails.

117. Furthermore, Plaintiff's fears are compounded by the fact that her Private Information has already been published on the dark web because of the Data Breach.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

118. As a result of the Data Breach, Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

119. As a result of the Data Breach, Plaintiff is presently at risk and will continue to be at increased risk of identity theft and fraud for years to come.

120. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains in Defendant's possession, is protected and safeguarded from future breaches.

## CLASS ACTION ALLEGATIONS

121. Plaintiff brings this nationwide class action on behalf of herself and on behalf of all others similarly situated, pursuant to S.C.R.C.P. 23.

> Nationwide Class: All individuals whose Private Information was accessed and/or acquired by an unauthorized party in the Data Breach (the "Class").

122. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

123. Plaintiff reserves the right to amend the definition of the Class or add a Class or Subclass if further information and discovery indicate that the definition of the Class should be narrowed, expanded, or otherwise modified.

124. Numerosity: The Class members are so numerous that joinder of all members is impracticable. Upon information and belief, Plaintiff estimates that the Class is compromised of

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

more than 40,000 Class Members, if not more. The Class is sufficiently numerous to warrant certification.

125. Common questions of law and fact exist as to all Class Members and predominate over any questions affecting solely individual Class Members. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class Members, are the following:

a. Whether and to what extent Defendant has a duty to protect the Private Information of Plaintiff and Class Members;

b. Whether Defendant has respective duties not to disclose the Private Information of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant has respective duties not to use the Private Information of Plaintiff and Class Members for non-business purposes;

d. Whether Defendant failed to adequately safeguard the Private Information of Plaintiff and Class Members;

e. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

f. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

g. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct; and

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

h. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

126. Typicality: Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Classes.

127. This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

128. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of Class Members in that he has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to Class members and the infringement of the rights and the damages he has suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

129. Superiority: Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that millions of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

130. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Members with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Members to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

131. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

132. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class-wide basis.

a. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their Private Information;

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

b. Whether Defendant's security measures to protect its data systems, and those belonging to third-party vendors, were reasonable in light of best practices recommended by data security experts;

c. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

d. Whether Defendant's failure to institute adequate protective security measures amounted to breach of an implied contract;

e. Whether Defendant failed to take commercially reasonable steps to safeguard consumer Private Information; and

f. Whether adherence to HIPAA and FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

## CAUSES OF ACTION

### COUNT I
**Negligence**
***(On behalf of Plaintiff and the Class)***

133. Plaintiff hereby repeats and realleges paragraphs 1 through 132 of this Complaint and incorporates them by reference herein.

134. Defendant required its patients, including Plaintiff and Class Members, to submit non-public Private Information in the ordinary course of providing its healthcare services.

135. Defendant gathered, stored, and transmitted the Private Information of Plaintiff and Class Members as part of its business of soliciting its services, which solicitations and services affect commerce.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

136. Plaintiff and Class Members entrusted Defendant with their Private Information with the understanding that Defendant would safeguard their information.

137. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

138. By assuming the responsibility to collect and store this data, and in fact doing so, and sharing it and using it for commercial gain, Defendant had a duty of care to use reasonable means to secure and safeguard their computer property—and Class Members Private Information held within it—to prevent disclosure of the information, and to safeguard the information from theft. Defendant's duty included a responsibility to implement processes by which it could detect a breach of its security systems in a reasonably expeditious period of time and to give prompt notice to those affected in the case of a data breach.

139. Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

140. Defendant owed a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards and other requirements discussed herein, and to ensure that its systems and networks, those of third-party vendors, and the personnel responsible for them, adequately protected the Private Information.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

141. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and its patients. That special relationship arose because Plaintiff and Class Members entrusted Defendant with their confidential Private Information, a necessary part of being Patients of Defendant.

142. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential Private Information.

143. Defendant was subject to an "independent duty," untethered to any contract between Defendant and Plaintiff or the Class.

144. Defendant breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members Private Information. The specific negligent acts and omissions committed by Defendant include, but are not limited to, (a) failing to adopt, implement, and maintain adequate security measures to safeguard Class Members Private Information; (b) failing to adequately monitor the security of its networks and systems, and those of its third-party vendors; and (c) allowing unauthorized access to Class Members Private Information.

145. A breach of security, unauthorized access, and resulting injury to Plaintiff and the Class was reasonably foreseeable, particularly considering Defendant's inadequate security practices.

146. It was foreseeable that Defendant's failure to use reasonable measures to protect Class Members Private Information would result in injury to Class Members. Further, the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

147. Defendant had full knowledge of the sensitivity of the Private Information and the types of harm that Plaintiff and Class Members could and would suffer if the Private Information were wrongfully disclosed.

148. Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing the Private Information of Plaintiff and Class Members, the critical importance of providing adequate security of that Private Information, and the necessity for encrypting Private Information stored on Defendant's systems.

149. It was therefore foreseeable that the failure to adequately safeguard Class Members Private Information would result in one or more types of injuries to Class Members.

150. Plaintiff and Class Members had no ability to protect their Private Information that was in, and likely remains in, Defendant's possession.

151. Defendant was in a position to protect against the harm suffered by Plaintiff and the Class as a result of the Data Breach.

152. Defendant's duty extended to protecting Plaintiff and Class Members from the risk of foreseeable criminal conduct of third parties, which has been recognized in situations where the actor's own conduct or misconduct exposes another to the risk or defeats protections put in place to guard against the risk, or where the parties are in a special relationship. *See* Restatement (Second) of Torts § 302B. Numerous courts and legislatures have also recognized the existence of a specific duty to reasonably safeguard personal information.

153. Plaintiff and Class Members Private Information wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

154. But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, the Private Information of Plaintiff and Class Members would not have been compromised.

155. There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiff and Class Members and the harm, or risk of imminent harm, suffered by Plaintiff and Class Members. The Private Information of Plaintiff and Class Members was lost and accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing, and maintaining appropriate security measures.

156. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) lost or diminished value of their Private Information; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time; (iv) loss of benefit of the bargain; and (v) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

157. As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

158. Additionally, as a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information in its continued possession.

159. Plaintiff and Class Members are entitled to compensatory and consequential damages suffered as a result of the Data Breach. Plaintiff and Class Members are also entitled to injunctive relief requiring Defendant to (i) strengthen their data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) continue to provide adequate credit monitoring to all Class Members.

**COUNT II**
**Negligence *Per Se***
***(On behalf of Plaintiff and the Class)***

160. Plaintiff hereby repeats and realleges paragraphs 1 through 132 of this Complaint and incorporates them by reference herein.

161. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information. Various FTC publications and orders also form the basis of Defendant's duty.

162. Pursuant to HIPAA, 42 U.S.C. § 1302(d), *et seq*., Defendant had a duty to implement reasonable safeguards to protect Plaintiffs and Class Members' Private Information.

163. Specifically, pursuant to HIPAA, Defendant had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

meaning without the use of a confidential process or key." *See* definition of "encryption" at 45 C.F.R. § 164.304.

164. Defendant breached its duties to Plaintiffs and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs and Class Members' Private Information.

165. Defendant violated Section 5 of the FTC Act, HIPAA, andsimilar state statutes by failing to use reasonable measures to protect Plaintiff's and Class Members' Private Information and by failing to comply with industry standards.

166. Defendant's conduct was particularly unreasonable given the nature and amount of Private Information obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

167. Class Members are consumers within the class of persons Section 5 of the FTC Act, HIPAA, and similar state statutes were intended to protect.

168. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

169. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendant's networks, databases, and computers that stored Plaintiff's and Class Members' unencrypted Private Information if Defendant did not

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

diligently ensure that its third-party party employed sufficient data security measures.

170. As a result of Defendant's negligence *per se*, Plaintiff and Class Members have been harmed and have suffered damages including, but not limited to: damages arising from identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing, and correcting the current and future consequences of the Data Breach.

## COUNT III
**Breach of Implied Contract**
***(On behalf of Plaintiff and the Class)***

171. Plaintiff hereby repeats and realleges paragraphs 1 through 132 of this Complaint and incorporates them by reference herein.

172. Plaintiff and the Class provided and entrusted their Private Information to Defendant. Plaintiff and the Class provided their Private Information to Defendant as part of Defendant's regular business practices.

173. In so doing, Plaintiff and the Class entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such information, to keep such information secure and confidential, and to timely and accurately notify Plaintiff and the Class if their data had been breached and compromised or stolen, in return for the business services provided by Defendant. Implied in these exchanges was a promise by Defendant to ensure that the Private Information of Plaintiff and Class Members in its possession was secure.

174. Pursuant to these implied contracts, Plaintiff and Class Members provided Defendant with their Private Information. In exchange, Defendant agreed to, among other things, and Plaintiff and the Class understood that Defendant would: (1) provide services to Plaintiff sand

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

Class Members'; (2) take reasonable measures to protect the security and confidentiality of Plaintiff and Class Members' Private Information; and (3) protect Plaintiff and Class Members' Private Information in compliance with federal and state laws and regulations and industry standards.

175. Implied in these exchanges was a promise by Defendant to ensure the Private Information of Plaintiff and Class Members in its possession was only used in accordance with agreed-upon reasons and that Defendant would take adequate measures to protect Plaintiff and Class Members' Private Information from unauthorized access.

176. A material term of this contract is a covenant by Defendant that it would take reasonable efforts to safeguard its patients' Private Information. Indeed, implicit in the agreement between Defendant and Plaintiff and Class Members was the obligation that both parties would maintain Private Information confidentially and securely. As the medical provider who possessed the Private Information, Defendant was in a superior position to protect the Private Information from the foreseeable Data Breach.

177. These exchanges constituted an agreement and meeting of the minds between the parties.

178. When the parties entered into an agreement, mutual assent occurred. Plaintiff and Class Members would not have disclosed their Private Information to Defendant but for the prospect of utilizing Defendant services. Conversely, Defendant presumably would not have taken Plaintiff and Class Members' Private Information if it did not intend to provide Plaintiff and Class Members with its services.

179. Defendant was therefore required to reasonably safeguard and protect the Private Information of Plaintiff and Class Members from unauthorized disclosure and use.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

180. Plaintiff and Class Members would not have entrusted their Private Information to Defendant in the absence of their implied contracts with Defendant and would have instead retained the opportunity to control their Private Information.

181. Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' Private Information.

182. Defendant's failure to implement adequate measures to protect the Private Information of Plaintiff and Class Members violated the purpose of the agreements between the parties.

183. As a proximate and direct result of Defendant's breaches of its implied contracts with Plaintiff and Class Members, Plaintiff and the Class Members suffered damages as described in detail above.

**COUNT IV**
**Unjust Enrichment**
***(On behalf of Plaintiff and the Class)***

184. Plaintiff hereby repeats and realleges paragraphs 1 through 132 of this Complaint and incorporates them by reference herein.

185. Plaintiff and Class Members conferred a monetary benefit on Defendant. Specifically, they provided Defendant with their Private Information. In exchange, Plaintiff and Class Members should have had their Private Information protected with adequate data security.

186. Defendant knew that Plaintiff and Class Members conferred a benefit upon it and has accepted and retained that benefit by accepting and retaining the Private Information entrusted to it. Defendant profited from Plaintiff's retained data and used Plaintiff's and Class Members' Private Information for business purposes.

187. Defendant failed to secure Plaintiff's and Class Members' Private Information and,

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

therefore, did not fully compensate Plaintiff or Class Members for the value that their Private Information provided.

188. Defendant acquired the Private Information through inequitable record retention as it failed to investigate and/or disclose the inadequate data security practices previously alleged.

189. If Plaintiff and Class Members had known that Defendant would not use adequate data security practices, procedures, and protocols to adequately monitor, supervise, and secure their Private Information, they would have entrusted their Private Information to Defendant.

190. Plaintiff and Class Members have no adequate remedy at law.

191. Defendant enriched itself by saving the costs it reasonably should have expended on data security measures to secure Plaintiff's and Class Members' Personal Information. Instead of providing a reasonable level of security that would have prevented the hacking incident, Defendant instead calculated to increase its own profit at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures and diverting those funds to its own profit. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's decision to prioritize its own profits over the requisite security and the safety of their Private Information.

192. Under the circumstances, it would be unjust for Defendant to be permitted to retain any of the benefits that Plaintiff and Class Members conferred upon it.

193. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) invasion of privacy; (ii) theft of their Private Information; (iii) lost or diminished value of Private Information; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

attempting to mitigate the actual consequences of the Data Breach; (vii) nominal damages; and (viii) the continued and certainly increased risk to their Private Information, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information.

194. Plaintiff and Class Members are entitled to full refunds, restitution, and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class Members may seek restitution or compensation.

195. Plaintiff and Class Members may not have an adequate remedy at law against Defendant, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT V**
**BREACH OF CONFIDENCE**
**(*On behalf of Plaintiff and the Class*)**

196. Plaintiff incorporates by reference and re-alleges each and every allegation set forth above in paragraphs 1 through 132 as though fully set forth herein.

197. At all times during Plaintiff's and Class Members' interactions with Defendant, Defendant was fully aware of the confidential and sensitive nature of Plaintiff's and Class `Members' Private Information that Plaintiff and Class Members entrusted to Defendant.

198. As alleged herein and above, Defendant had a special relationship with Plaintiff and the Class as their medical provider, and its relationship with Plaintiff and the Class was governed by terms and expectations that Plaintiff's and the Class Members' Private Information would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

199. Plaintiff and the Class entrusted Defendant with their Private Information with the explicit and implicit understandings that Defendant would protect and not permit the Private Information to be disseminated to any unauthorized third parties.

200. Plaintiff and the Class also entrusted Defendant with their Private Information with the explicit and implicit understandings that Defendant would take precautions to protect that Private Information from unauthorized disclosure.

201. Defendant voluntarily received Plaintiff's and Class Members' Private Information in confidence with the understanding that their Private Information would not be disclosed or disseminated to the public or any unauthorized third parties.

202. As a result of Defendant's failure to prevent and avoid the Data Breach from occurring, Plaintiff's and Class Members' Private Information was disclosed and misappropriated to unauthorized third parties beyond Plaintiff's and Class Members' confidence, and without their express permission.

203. As a direct and proximate cause of Defendant's actions and omissions, Plaintiff and the Class have suffered damages.

204. But for Defendant's disclosure of Plaintiff's and Class Members' Private Information in violation of the parties' understanding of confidence, their Private Information would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Defendant's Data Breach was the direct and legal cause of the theft of Plaintiff's and Class Members' Private Information as well as the resulting damages.

205. The injury and harm Plaintiff and the Class suffered was the reasonably foreseeable result of Defendant's unauthorized disclosure of Plaintiff's and Class Members' Private Information. Defendant knew or should have known its methods of accepting and securing Plaintiff's and Class Members' Private Information was inadequate as it relates to, at the very least, securing servers and other equipment containing Plaintiff's and Class Members' Private Information.

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

206. As a direct and proximate result of Defendant's breach of its confidence with Plaintiff and the Class, Plaintiff and the Class have suffered and will suffer injury, including but not limited to: (i) identity theft; (ii) the loss of the opportunity how their Private Information is used; (iii) the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual present and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their Private Information, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private Information of individuals; and (viii) present and future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

207. As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and the Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grants the following:

A. For an order certifying the Class, as defined herein, and appointing Plaintiff and her Counsel to represent the Class;

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the Private Information of Plaintiff and Class Members, and from refusing to issue prompt, complete, any accurate disclosures to Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state, or local laws.

iii. requiring Defendant to delete, destroy, and purge the Private Information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to implement and maintain a comprehensive information security program designed to protect the confidentiality and integrity of the Private Information of Plaintiff and Class Members;

v. prohibiting Defendant from maintaining the Private Information of Plaintiff and Class Members on a cloud-based database;

vi. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

vii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

ix. requiring Defendant to segment data by, among other things, creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

x. requiring Defendant to conduct regular database scanning and security checks;

xiv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential Private Information to third parties, as well as the steps affected individuals must take to protect themselves; and

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

xvi. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and for a period of 10 years, appointing a qualified and independent third-party assessor to conduct an attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment.

D. For an award of damages, including actual, statutory, nominal, and consequential damages, as allowed by law in an amount to be determined by a jury at trial;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: July 8, 2025

Respectfully submitted,
By: */s/Paul J. Doolittle, Esq.*
Paul J. Doolittle, Esq.
(SC State Bar No.: 66490 )
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Telephone:(803) 222-2222
Email: Paul.Doolittle@poulinwilley.com
cmad@poulinwilley.com

Mariya Weekes*
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
201 Sevilla Avenue, 2nd Floor

Coral Gables, FL 33134
Tel: (786) 879-8200
Fax: (786) 879-7520
mweekes@milberg.com

Jeff Ostrow*
**KOPELOWITZ OSTROW P.A.**
One West Law Olas Blvd., Suite 500
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Email : ostrow@kolawyers.com

*Attorneys for Plaintiff and the Proposed Class*

**pro hac vice* forthcoming

ELECTRONICALLY FILED - 2025 Jul 08 4:58 PM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

ELECTRONICALLY FILED - 2025 Jul 29 9:03 AM - CHESTERFIELD - COMMON PLEAS - CASE#2025CP1300499

*IN THE THIRD JUDICIAL CIRCUIT COURT OF COMMON PLEAS FOR CHESTERFIELD COUNTY, SOUTH CAROLINA*

---

*Sondra Bristow Twitty, on behalf of herself and all others similarly situated*
*Plaintiff(s)*

*VS.* *Case No: 2025CP1300499*

*Sandhills Medical Foundation, Inc.*
*Defendant(s)*

---

## *AFFIDAVIT OF SERVICE*

*I, Lester L. Franzen, a Private Process Server, being duly sworn, depose and say:*

*That I have been duly authorized to make service of the Summons and Complaint in the above entitled case.*

*That I am over the age of eighteen years and not a party to or otherwise interested in this action.*

*That on 07/10/2025 at 01:35 PM, I served Sandhills Medical Foundation, Inc. c/o Ernest J. Stan Wardlaw, Registered Agent at 1111 Broad Street, Suite C, Camden, South Carolina 29020 with the Summons and Complaint by serving Shannon Blackwell, Assistant to the Chief Executive Officer, authorized to accept service.*

*Shannon Blackwell is described herein as:*

*Gender:* *Female* *Ethnicity:* *Caucasian* *Age:* *45* *Weight:* *260* *Height:* *5'7"* *Hair:* *Blond*

*I solemnly affirm under the penalties of perjury that the contents of this document are true to the best of my knowledge, information, and belief.*

*Executed on* 17 July 2025

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Tracy L Steele

5/22/33
*Commission Expires*

TRACY L. STEELE NOTARY PUBLIC SOUTH CAROLINA Exp. May 22, 2033

*Lester L. Franzen*

*Client Ref Number: Sandhills Medical Foundation*
*Job #:13688045*